# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT

FILED

2017 MAY 2 AM 9 50

U.S. DISTRICT COURT
NEW HAVEN, CT.

3:17MJ 782-SALM

ss:    New Haven

**Filed Under Seal**

COUNTY OF NEW HAVEN

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

### INTRODUCTION

I, Brian A. Ross, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, having been duly sworn, state:

1. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by the ATF as a Special Agent since July, 2013. Previously, I worked as a Special Agent with the State of Maine Drug Enforcement Agency for 6 years and as a Patrolman for the Town of Farmington, Maine Police Department for 3 years. I served over 4 years in the United States Army at Fort Bragg, North Carolina and I have an Associate of Science Degree in Criminal Justice. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.

2. I have received specialized training in firearms identification and the investigation of firearms-related offenses. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted

1

felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts.  I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs.  As such, I have coordinated the controlled purchases of illegal narcotics and participated in the controlled purchases of firearms utilizing confidential sources, cooperating witnesses and undercover law enforcement officers; written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of firearms and illegal drugs; provided testimony, both in Grand Jury proceedings and District Court proceedings; and have spoken with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal firearms and drugs.  In addition, I have been involved in the investigation of street gangs, including gangs with a national presence as well as locally based gangs.  I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

3.      I am the case agent in the investigation of a NIBIN shooting case involving members of several local street gangs including "Goodrich Street Boys" or "G$B", "Slutwave" and the "Ville."  This investigation is focused on these groups for possible violations of Title 18 United States Code, Section 1962(d) (racketeering conspiracy); Title 18, United States Code, Section 1959 (violent crimes in aid of racketeering); Title 18, United States Code, Section 924(c) (possession and use of firearms in furtherance of violent crimes).  I have participated in this

2

investigation and, because of this participation, as well as information provided by other law enforcement officers, I am thoroughly familiar with the information contained herein.

4.      I submit this affidavit in support of an application for a search warrant for the cellular telephone contents and records of a cellular telephone that is currently in the property room of the Manson Youth Institute ("MYI") located at 42 Jarvis Street, Cheshire, Connecticut. Dean Williams abandoned this cellular telephone after his release from the MYI.  This cellular telephone is identified as follows:

(a)      **a black ZTE track phone, model Z793C, with a serial number of 326E52050A66 (the "Target Device")**.

5.      This affidavit sets forth relevant facts and evidence but does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter.  The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided by detectives and officers of the New Haven Police Department ("NHPD") and other law enforcement officers including other ATF agents; and (3) my experience and training, as well other information.

## PROBABLE CAUSE

6.      ATF New Haven, in conjunction with the New Haven Police Department, has been investigating over 40 incidents involving recovered firearms and shootings related to these firearms in the cities of New Haven and Hamden.  These incidents involved members of G$B, who investigators have identified as Milton WESTLEY a.k.a. "Reese;" Clifford BRODIE a.k.a. "Cliff;" Michael VIA a.k.a. "Mike Live;" Sedale PERVIS a.k.a. "Scope," Michael BELL a.k.a. "M.B.," Dejuan WARD a.k.a. "Hotboy" and Curtis RATCHFORD a.k.a. "Curt."  They also involve members of the "Slutwave" and "Ville" street gangs.  G$B has had an ongoing dispute

with both gangs.

7.      On February 6, 2016 at about 2234 hours, NHPD Officers responded to the area of 320 Munson Street, New Haven, CT for a report of shots fired.  When officers arrived, they found the victim, Damien Smith, had suffered a gunshot wound to his back.  Officers also located several known members and associates of the "Slutwave" street gang who appeared to be with Smith.  One of those members was Dean Williams.

8.      Officers canvased the scene and found 13 shell casings that consisted of 9mm and .380 caliber casings.  Officers also spoke to a witness who had seen two black males, who were both approximately 6 feet tall and skinny, running away from Munson Street after the shooting. The witness also saw these males get into a dark grey Nissan sedan on Argyle Street and then flee the area.  The witness said that the Nissan was already running with its lights on when the two black males ran to it.

9.      The recovered shell casings were entered into the National Integrated Ballistic Information Network ("NIBIN") to be checked against other recovered shell casings.  This Affiant, who has been trained on how to use the NIBIN system, learned that the 9mm casings matched over ten other incidents in which it appeared that members from either the Ville or Slutwave had been shot.  This Affiant further learned that the .380 caliber casings matched approximately four other incidents where members of the Ville and Slutwave were targeted. From this information and in speaking with witnesses, investigators determined that the 9mm and .380 firearms were likely being used by G$B to fire at rival gangs, namely the Ville and Slutwave.

10.      The Affiant additionally was informed that the .380 firearm was recovered after a domestic incident between Sedale PERVIS a.k.a. "Scope" and his girlfriend on August 18,

2016 and the 9mm firearm was recovered from PERVIS's residence on September 2, 2016.

11.    On March 1, 2017, the Affiant interviewed Dean Williams with New Haven Police Detective McDermott.  Williams was questioned about the Munson Street shooting where Damien Smith was shot in the back.  Williams, who is himself a member of Slutwave, confirmed that he was present for the shooting and named several members of the Slutwave gang who were also present.  Williams said that there were three shooters and two of them had masks covering their faces.  Williams stated that he recognized the one shooter who was not wearing his facemask.  Williams knew the unmasked shooter as Clifford BRODIE and told the Affiant that BRODIE's Facebook account name is "Go Brazy Doce".  Williams also said that he heard that the shooters were G$B and they were trying to actually shoot "Butter" (Anthony Pritchett) who is a Slutwave member.

12.    Williams said that after the shooting, BRODIE posted a Facebook "live" video where BRODIE admitted to taking part in the shooting on Munson Street.  Williams said that he saved the video to his phone, but his phone was at the Manson Youth Institute (MYI) in Cheshire, CT.  Williams said that after he was released from serving a sentence in MYI, he decided not to pick up his property.  Williams said that the staff at MYI tried to get him to take his property but he refused to take it and said that he would get a new phone when he returned to New Haven.  The Affiant asked Williams for his permission to retrieve the phone and look through it.  Williams told the Affiant that he did not care if law enforcement retrieved his phone and searched it.

13.    On March 7, 2017, Department of Corrections Captain Craig Burnett confirmed that Williams left a cell phone in his property when he was discharged from MYI.  The property room told Captain Burnett that the phone is a ZTE track phone; model Z793C, serial number

326E52050A66.  MYI stated that they would hold the cell phone until law enforcement retrieved it.

14.      Based upon Williams' statement that he saved a Facebook live video of BRODIE confessing to committing a shooting on Munson Street, and Williams involvement in the Slutwave gang, the Affiant believes that the Williams phone will contain evidence that will assist law enforcement to investigating the series of NIBIN related shootings.

## INFORMATION REGARDING CELLULAR TELEPHONES
## AND THE REQUESTED SEARCH WARRANTS

15.      As previously noted, the Target Device is currently in the property room of the Manson Youth Institute and is a black ZTE track phone, model Z793C, with a serial number of 326E52050A66.

16.      Based upon my training and experience, and in consultation with other law enforcement officers, I know that cellular telephones store voice mail messages, names, telephone numbers, addresses, sent and received text messages, and images on their digital memory.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used this particular Target Device, as well as evidence relating to co-conspirators with whom the Target Device was in contact.  I also know that people use cellular telephones to take pictures of themselves holding guns, drugs and proceeds from crimes committed, such as robberies and drug sales.  I also know that cellular telephones have the capability of saving videos and pictures that others post to online forums and retaining those images and videos on the phone.

17.      With regards to this Target Device, I request permission to enter and search the Target Device for evidence relating to the aforementioned shooting and other criminal activity

relating to Slutwave and GSB.  Based on my training and experience, and as set forth in this affidavit, I know that wireless telephones are often used by gang members to communicate efforts to conduct criminal activities and it is likely that the Target Device was used to communicate with William's co-conspirators regarding Slutwave's criminal activities and generally to communicate about and with rival gangs.  Furthermore, based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of text communications between co-conspirators.  Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones:

    a.  the telephone number, ESN number, serial number, and SIM card number of said telephone;

    b.  the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

    c.  descriptions of time, date, locations, items, or events showing or tending to show  the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d.  any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

    e.  any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

    f.  GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

    g.  saved searches, locations, and route history in the memory of said devices;

    h.  internet browsing history, to include, internet searches in the memory of said device; and

    i.  Images and videos in the memory of said device.

18.     It is requested that the Court authorize the retrieval of the above-described stored

electronic information by printing said stored electronic information or otherwise reproducing

said stored electronic information, by converting said stored electronic information, or by

copying said stored electronic information into storage in another device.  I am aware that in

some cases the software or equipment necessary to analyze wireless telephones in this manner is

not readily available to law enforcement during the course of the execution of a search and/or

arrest warrant.  Further, turning on wireless phones in a non-laboratory setting, where there is

no "jammer" active or radio shielding devices, permits additional signals to be received by the

phone and thereby alters the data present in the phone at the time of seizure.  Therefore it is

often necessary to remove a seized phone to a laboratory in order to preserve the data therein

from being corrupted.

19.     It is also requested that warrant be deemed executed once the Target Device has

been seized in the manner described above, and that further analysis of the images be permitted

at any time thereafter.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     The warrant applied for would authorize the seizure of electronic storage media

or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

21.      As described above and in Attachment A, this application seeks permission to

search and seize things that the Target Device might contain, in whatever form they are stored.

Based on my knowledge, training, and experience, I know that electronic devices can store

information for long periods of time.  Even when a user deletes information from a device, it can

sometimes be recovered with forensics tools.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

22.     Searching for the evidence described in Attachment A may require a range of data analysis techniques.  In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant.  Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information.  These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant.  In light of these difficulties, the ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## CONCLUSION

24.     I submit that this affidavit supports probable cause for a warrant to search the

Target Device and seize the items described in Attachment A as evidence, fruits, and

instrumentalities of the crimes of violent crimes in aid of racketeering, in violation of 18 U.S.C.

§ 1959; RICO conspiracy, in violation of 18 U.S.C. § 1962; and possession and use of a firearm

in furtherance of violent crimes in violation of 18 U.S.C. § 924(c).

BRIAN A. ROSS
ATF Special Agent

Subscribed and sworn to before me on this 1st day of May, 2017, at New Haven,
Connecticut.

/s/ Sarah A. L. Merriam

HONORABLE SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

1.    All records contained in the Target Device (black ZTE track phone, model Z793C serial number 326E52050A66), which is presently in the custody of the Manson Youth Institute, including:

   a.    the telephone number, ESN number, serial number, and SIM card number of said device;

   b.    the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

   c.    descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

   d.    any and all records, however created or stored, which tend to demonstrate ownership and use of the device, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the device;

   e.    any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the device, such as passwords, sign-on codes, and program design;

   f.    GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

   g.    saved searches, locations, and route history in the memory of said devices;

   h.    internet browsing history, to include, internet searches in the memory of said device; and

   i.    images and videos in the memory of said device.

2.    Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

11

4.     It is specifically authorized that stored electronic information, data, information and images contained in the above-described devices may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.

12